CORNELIA M. RUCCI *v.* ANTONIO RUCCI ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 122008

Memorandum filed January 29, 1962

*Joseph F. Ryter,* of Hartford, for the plaintiff.

*Frank A. Francis,* of Hartford, for the named defendant.

*Valentine D. Clementino,* of Hartford, for defendant Nick Rucci.

*Robinson, Robinson & Cole,* of Hartford, for Society for Savings, garnishee.

*Zeman, Daly & McNamara,* of Hartford, for Edith and Lawrence Coin, garnishees.

COTTER, J. Plaintiff seeks support in an equitable action from her husband Antonio Rucci and a reconveyance of property transferred by him to the defendant Nick Rucci.

Cornelia and Antonio Rucci were married July 21, 1958. She is sixty-four years old and he is eighty-two. They have grown children of previous marriages. She brought a prior action for equitable support on September 16, 1959, to the Court of Common Pleas in Hartford County (No. 75883), of which judicial notice is taken in accordance with the request of all counsel. On January 27, 1960, the court *(Wall, J.)* decided that action for Antonio Rucci and noted that the wife "returned to him only on condition that he deposit a substantial sum of money in her bank account"; that "she was looking for an excuse to leave as her demands for additional money for her return belies" a claim that her husband locked her out of the house. Judge Wall further observed that the husband's "conduct toward her has always been one of complete cooperation but mutuality on her part was lacking." He found she was more interested in acquiring his worldly possessions than in promoting a happy marriage relationship. It was agreed that the issues decided by Judge Wall were res judicata up to the date of judgment in that case, viz.: January 27, 1960.

The plaintiff testified herein that thereafter she talked with her lawyer and in February, 1960, she proceeded to her husband's house with a suitcase in her hand; he was not in his apartment, and upon going outside the house she told him she was there with some of her things, but she testified he said, "Go, you ain't going to get nothing." Thereupon

she came back "election day" and "he opened the door and pushed her out." She admitted on cross-examination that she went to the house on instructions from her lawyer and on each occasion she brought a friend with her. She had six children by her former husband, whom she divorced. She admits that she married her present husband after he promised to give her $7000 and that she would not live with him "without money." She is not a completely naive or ingenuous woman since, in addition to her former marital experience, she owns and maintains a large tenement building from which she collects $253 a month for four apartments, occupies another herself, and her son lives in the sixth apartment. In addition, her present husband promised to bequeath her $3000 by will, which he executed, and leave her a life interest in his property upon marriage. She also reiterated that she does not believe she would have married him if he did not have money. It is defendant Antonio Rucci's testimony that she asked him for $10,000 before they were married and that she left him thirteen times and would only return to him if he gave her additional money.

This action was brought June 21, 1960. The former action was hardly finished and the file interred when the plaintiff commenced her machinations anew. She proceeded as if marriage were a business venture or a commercial enterprise. She made a very poor witness for her cause and failed to establish good faith in her efforts to acquire equitable support.

It would appear from the decision of *Wall, J.,* and the evidence herein that the husband was justified in living apart. A husband may be so justified even though the wife's conduct does not amount to intolerable cruelty; *State* v. *Lugg,* 144 Conn. 21, 25; and it would appear in this case that

there was ample reason to live apart. The wife's offer to return and resume the marriage obligations must be made in good faith; there must be a reasonable probability that she will not indulge in her former improper and mercenary conduct and a showing that there will be a change in her attitude toward her husband in that regard. *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684.

The court cannot find that the plaintiff adopted her course to return to the defendant in good faith and become a loving, considerate and helpful wife; rather she proceeded to take steps which would enable her to obtain support and increase her financial worth at his expense without giving him the mutual respect and care to which he was entitled. Her acknowledgment to love, honor and obey was of no concern to her. To entitle her to support, she must be living apart with just cause. *Trenchard* v. *Trenchard,* 141 Conn. 627, 631.

Our court has held that the status and rights of the husband resulting from the marital relationship, sometimes referred to as "consortium," include the husband's right to the services, society, companionship and conjugal affection of his wife; *Marri* v. *Stamford Street R. Co.,* 84 Conn. 9, 12; and it naturally follows that she has a duty "to be his helpmeet, to love and care for him in such a role, to afford him her society and her person, to protect and care for him in sickness, and to labor faithfully to advance his interests." 26 Am. Jur. 637, § 9. Likewise, she must perform "her household and domestic duties, in the sense of whatever is necessary in such respect according to their station in life, without compensation therefor. A husband is entitled to the benefit of his wife's industry and economy." Ibid. The parties to a marriage have mutual obligations and duties, and when either party refuses to meet the fair demands of the mar-

riage contract or violates its obligations, the innocent spouse is not compelled to further observe marital duties to the spouse at fault. *State* v. *Newman,* 91 Conn. 6. Marital rights and correlative duties exist on the wife's part as distinctly as on the husband's part. *Mayhew* v. *Mayhew,* 61 Conn. 233, 235.

It has been well stated that a court " 'ought to be convinced not only that the offer is made in sincerity, but that from the character and conduct . . . there is a reasonable probability that it will be faithfully adhered to.' " *DeRosa* v. *DeRosa,* 129 Conn. 409, 411.

The difference in ages sixty-four and eighty-two years, in nationality, in children and grandchildren by their former spouses to whom they are attached by ties of blood, militate against a real, affectionate, understanding companionship at this time of life without an underlying sincere feeling and desire to be husband and wife. Under the circumstances, the plaintiff is not entitled to support at this time.

The issues are found, and judgment may enter, in favor of the defendants.