Frances R. Garvy, Appellant, v. A. Cosmas Garvy, Appellee.

Gen. No. 41,332.

Opinion filed April 23, 1941. Rehearing denied May 16, 1941.

GEORGE A. CURRAN, of Chicago, for appellant; W. H. MEYER, of Chicago, of counsel.

BENJAMIN B. DAVIS, of Chicago, for appellee; HARRY J. LURIE, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an action in chancery for separate maintenance filed by Frances R. Garvy against her husband A Cosmas Garvy, based upon the alleged refusal of the defendant A. Cosmas Garvy to permit his wife to return to their home and live with him as his wife. Upon the action of the chancellor of the superior court a decree was entered whereby the complaint of the plaintiff was dismissed for want of equity.

No point is raised as to the pleadings.

In 1932 the parties hereto became estranged when the plaintiff Frances R. Garvy left the home of the defendant A. Cosmas Garvy. Thereafter, a suit was commenced by the defendant herein against the plaintiff Frances R. Garvy for divorce, to which the plaintiff herein filed a cross bill asking for separate maintenance. The trial court in that case dismissed the complaint of Andrew C. Garvy (who is named in this case as A. Cosmas Garvy) and granted the plaintiff separate maintenance. Thereafter, on appeal this court affirmed the decision of the trial court denying divorce and this court reversed the cross bill of Frances R. Garvy and directed the trial court to dismiss the cross bill. Thereafter, plaintiff herein, sought to become reestablished in her home and to resume marital relations with her husband. She went to their home but was ejected by her husband, defendant herein.

Plaintiff's theory of the case is set forth substantially as follows:

Although the plaintiff and the defendant began living separate and apart on July 16, 1932, the opinion

of the Appellate Court entitled *Garvy v. Garvy,* 282
Ill. App. 485, finding both parties, the present plain-
tiff and defendant, at fault and affirming the decree
of the circuit court of Cook county, Illinois, dismiss-
ing the bill for divorce filed by A. Cosmas Garvy and
reversing the decree of said court granting separate
maintenance on the cross complaint of Frances R.
Garvy, and the Supreme Court of the State of Illi-
nois in February 1936, denying the petition of
Frances R. Garvy for leave to appeal from said de-
cision of the Appellate Court, left both of the parties
as it found them, husband and wife. Thus in February
1936, neither party was living separate and apart
without fault. By the refusal of A. Cosmas Garvy,
defendant, to accept the offer of Frances R. Garvy,
plaintiff, made in good faith on March 19, 1936, to
return to her home and her husband and resume her
marital relationship, a new cause of action became
vested in the wife to maintain a complaint for separate
maintenance because she was forced to live separate
and apart from her husband without her fault.

Defendant's theory of the case is not set forth as
is required by the rules of this court. Under the
heading ''Statement'' which appears in appellee's
brief we have adopted the following as defendant's
theory. It is as follows:

''The defendant's position is that when plaintiff
separated from the defendant on July 16, 1932, she
did so without good cause, not without her fault, and
by agreement; that, consequently, her living apart on
and subsequent to said date *has not been for good
cause and without fault on her part;* that the decision
of this Court [the Appellate Court] in the case of
*Garvy v. Garvy,* 282 Ill. App. 495 [485], finding and
holding, as it did, that the plaintiff was not 'living
separate and apart without fault on her part' as a re-
sult of the separation of the parties on July 16, 1932,
is *res judicata* between the parties, establishing an

estoppel by judgment or an estoppel by verdict against the plaintiff from again attempting to assert a claim for separate maintenance, based upon the same separation, the parties never having resumed marital relations thereafter; that plaintiff did not, within one year from the date of her departure from the domicile of the parties on July 16, 1932, make any offer in good faith to return to the defendant (as was also adjudicated in the prior proceedings) and that, therefore, the defendant was not legally bound to receive her on March 19, 1936 or resume the marital status. It is further the position of the defendant that the question of the good faith of the plaintiff's offer to return on March 19, 1936 (over three years and eight months from the time she left the defendant) is not an issue in the case.

"Even if this Court [meaning the Appellate Court] were to review the evidence, the record clearly shows that no *bona fide* offer to return was made by the plaintiff within one year from the separation by agreement, and the offer of March 19, 1936 was no more sincere than her prior offers."

After hearing the evidence in this case, the trial court evidently relying upon a former decision of the circuit court, as well as an opinion of this court in reversing in part the decision of the circuit court in the former case, adopted the theory that *res judicata* applied and would forever thereafter prevent the parties from resuming their marital relations.

The decree entered in the trial court on January 15, 1940, in the instant case, among other things, sets forth the following:

"3. That on March 19, 1936 the plaintiff appeared at the home of the defendant and again offered to return to live with him but the defendant refused to be reconciled with her.

"4. That the offer of the plaintiff on March 19, 1936 to become reconciled with the defendant does not

differ substantially from her prior offers which the Appellate Court, in its decision, found the defendant was justified in refusing; that by reason of such Appellate Court decision the Court feels that it is not necessary to pass on the question of whether the offer of plaintiff on March 19, 1936 to become reconciled with defendant was made in good faith.''

The difficulty with this decree is that it relies upon a decision of this court as its basis for the invocation of the doctrine of *res judicata*. The interpretation of the language used in the Appellate Court opinion as made by the trial court and the deductions which were drawn therefrom, were not justified. The former case did not find that she had presented herself at the home of defendant, in fact it was specifically pointed out that the efforts which she had made up to that time for the resumption of the marital state, consisted only of having written a letter to defendant on St. Valentine's Day and also by going to defendant's office one evening when she asked him to take her home in his automobile, which defendant refused to do. We did not construe these actions on the part of the plaintiff to have been a return to the home of her husband. It is pertinent, we think, to point out the fact, although it was not argued in the former suit, that the defendant when he filed his original bill for divorce obtained an unusual injunctional order commanding the plaintiff herein to leave their home and preventing her from returning thereto. That order was entered November 3, 1933, and reads as follows:

''This cause having come on to be heard on the sworn bill of complaint, and the court having considered the said bill of complaint and having listened to the arguments of counsel for complainant in support thereof, and it appearing to the court that an injunction should issue as prayed in said bill of complaint,

''IT IS HEREBY ORDERED, ADJUDGED and DECREED that a writ of injunction issue without notice, *restraining the*

*said defendant from occupying the house occupied by complainant and his said minor children at 6000 Sheridan Road, Chicago, and to cease and desist from entering the said premises, or molesting the minor children of complainant, or complainant, until further order of this court."*

In our opinion in the former case, it was found that the testimony of the plaintiff herein declared that she did not know why she left their home and this court further found that there was not sufficient evidence to justify us in saying that she had made an effort to return to her home and husband. In the instant case, however, the facts as heretofore stated, are entirely different. Plaintiff went to their home on Sunday, March 19, 1936, taking her wearing apparel with her preparatory to remaining there, some of her clothes had remained there during her absence. She was admitted to the residence where her husband was having dinner with the children and others. Plaintiff herein testified that the following conversation took place between them:

" 'Cos, I have come home again.' He immediately arose, very much excited and said, 'Home, this is not your home, and you are not going to stay here. You cannot stay here. The courts made that plain.' I said, 'No, I believe not. We are still husband and wife.' And then, more excitedly he exclaimed, 'Nothing of the kind. Nothing of the kind. Nothing of the kind. Why did you have to drag all this divorce matter through the courts for?' And I answered, 'I—I never wanted the suit. You filed the suit for divorce.' "

Referring to the same conversation defendant testified that he stated:

"I said, 'I would advise you to leave here peaceably because I have been told by my lawyer either to have you put out, or call the police.' Immediately she started across towards the door. I preceded her, and

opened the door, and my son took her baggage and laid it out there as a gentleman would. She told me, 'I came home because I had no money and no place to go.' ''

Eloise Williams, a witness on behalf of defendant, testified relative to the above, as follows:

. ''When she had already walked into the study and when he walked in *he asked her if she would leave peacefully or he would have to call the police or have her put out, that accordingly—that she must leave.*''

We have set forth this testimony practically verbatim so that it may readily be seen there was quite a material difference between the plaintiff returning home and her offer to remain at home and resume marital relations as was done in the instant case, as distinguished from her having written a letter to her husband and going to his office and asking that he drive her home in his automobile. It must be borne in mind that these parties are still husband and wife and it is the duty of the husband to support his wife. This is a continuing obligation and, even though the wife should leave the husband for a time, she has a right to return to their home as was done in the instant case for the purpose of resuming the status of husband and wife. In this case the plaintiff was prevented from doing that by her husband.

The following testimony of the defendant and the ruling of the court thereon relative to the attitude of the defendant toward his wife, is as follows:

''Subsequent to the entry of the final decree in the former case I did not ask Mrs. Garvy to return. I might have been willing to have her return since the date of the decree. I cannot say one way or the other.

''Q. Are you now willing to take Mrs. Garvy back?

'' (Whereupon attorney for defendant objected and the Court sustained the objection).''

In sustaining this objection, when an endeavor was being made to find out the attitude of the defendant

toward his wife, the court committed error. The attitude of the parties, one toward the other, whether they liked each other or disliked each other and whether they wanted to resume marital relations or not, is quite important in a case of this nature and we believe the defendant should have been permitted to answer.

It is contended by defendant that the year of limitation as provided by statute, in which suit shall be commenced, would prevent the filing of the bill for separate maintenance in this case. We do not think that the time which elapsed when the original suit was pending and appeals were made to the Appellate and Supreme Courts, could be considered as chargeable against plaintiff, nor do we think the time during which plaintiff was absent and was being supported by her husband could be considered as chargeable against plaintiff.

The parties to this suit originally separated on July 16, 1932, and from that time on lived separate and apart. On November 4, 1933, the defendant herein filed his bill for divorce in the circuit court of Cook county, Illinois, and plaintiff herein filed her cross bill seeking separate maintenance to which an answer was filed. This court in its opinion in that case found that neither party was living separate and apart from the other without fault, and no relief was granted. The petition for leave to appeal from the opinion of the Appellate Court was denied by the Supreme Court. *Travelers Ins. Co. v. Wagner,* 279 Ill. App. 13, p. 17; ch. 110, sec. 74, Ill. Rev. Stat. par. 198 [Jones Ill. Stats. Ann. 104.074].

In *Floberg v. Floberg,* 358 Ill. 626, the court at page 629, said: "It is manifest that the one-year period during which it is charged the complainant deserted her husband embraces the time during which her bill against her husband was pending and undisposed of in the circuit court. Her suit for separate maintenance,

as the action under the statute is commonly designated, corresponds with the divorce of *a mensa et thoro,* which was the only kind of a divorce granted by the ecclesiastical law. The general rule is where a suit for divorce is brought and the same is pending between the parties to the marriage contract, the parties are not only justified in living apart but necessarily must do so. Such living separate and apart does not constitute willful desertion without reasonable cause within the meaning of the Divorce act. It would be incompatible with a pending suit for the dissolution or modification of the marriage contract for the parties to live together. If the suit is carried on *bona fide,* it is not incumbent, during its pendency, upon either party to resume the marital status. The time so consumed by the litigation cannot be reckoned in the calculation of the statutory period of desertion. The rule applies alike to pending proceedings for separate maintenance under the statute and for divorce. It is 'time out.'" We do not think the filing of the bill for separate maintenance was barred by the statute.

Again referring to the fact that the trial court refused to permit inquiry to be made as to the good faith of the plaintiff and the defendant, and so ruled we cite from the case of *Haley v. Haley,* 209 Ill. App. 153, page 155, wherein it was said:

"It is the law in this State that under such circumstances it is the duty of the husband to receive the wife and properly provide for her, and that should he refuse to perform this duty it cannot then be said that she is living apart from her husband through her fault. The language of the Supreme Court in *Thomas v. Thomas,* 152 Ill. 577, 579, is directly applicable: 'Even though the original separation was without any fault of the husband, still if she afterwards, in good faith, offered to return and live with him, it was his duty to receive her back and there properly provide for

her.' This rule was applied by a branch of the Appellate Court to facts exactly like those now before us, in *Pratt v. Pratt,* 197 Ill. App. 530. Applying this rule to the facts of this case it follows that the complainant was living apart from her husband without her fault and, under the statute, was entitled to a decree of separate maintenance."

Under the evidence and the law as defined in this case, we are convinced that the plaintiff in this case is now living separate and apart from her husband, defendant herein, without fault on her part according to the terms of the statute. Should the intention of the statute be construed to be otherwise and, by its terms, the husband become immune from the duty to provide for his wife, then he would be having the benefits of a separation or divorce from his wife without a court decree and be relieved of all responsibility. That was not the intention of the legislature.

For the reasons herein given, the decree of the superior court is hereby reversed and the cause is remanded with directions to enter a decree for separate maintenance in favor of plaintiff Frances R. Garvy and against the defendant A. Cosmas Garvy, with an allowance for support and maintenance commensurate with the defendant's means.

*Decree reversed and cause remanded with directions.*

HEBEL, P. J., and BURKE, J., concur.