**Laetitia K. Coolidge, Appellee, v. Winthrop K. Coolidge, Appellant.**

**Gen. No. 46,990.**

First District, First Division.
March 12, 1957.
Released for publication May 2, 1957.

171

William C. Wines, of Chicago, for appellant.

James A. Sprowl, John D. Knodell, of Chicago, for appellee; Johnston, Thompson, Raymond, and Mayer & Jenner, all of Chicago, of counsel.

JUDGE FRIEND delivered the opinion of the court.

This appeal, Laetitia K. Coolidge's (plaintiff's) suit for separate maintenance against her husband, Winthrop K. Coolidge (defendant), is a sequel to the decision in Coolidge v. Coolidge, 4 Ill.App.2d 205, hereinafter referred to as the first Coolidge case. The pleadings and essential facts in that proceeding are set forth in considerable detail and need not here be restated in full. Plaintiff had on March 11, 1952 filed her complaint against defendant for separate maintenance, charging that he, "disregarding his duties to plaintiff and without just provocation, endangered her health and rendered her life miserable and unendurable." About a year later she filed an amended and a supplemental complaint reiterating these allegations and, in addition, charging defendant with three acts of cruelty and constructive desertion, and praying divorce, alimony, a division of property and an award of the custody of all five of the Coolidge children; in the alternative, she repeated her prayer for separate maintenance. The chancellor awarded plaintiff a decree of divorce, from which defendant appealed. While the appeal was pending the chancellor, having

heard evidence as to the family life and financial circumstances of the Coolidge family, entered a supplemental decree awarding plaintiff alimony, $8,000 by way of property division, and custody of the three younger children, Olga, Dexter and Carol, together with child support; defendant was awarded the custody of the two older girls, Laetitia and Deborah. The wedding presents were divided between the parties. Plaintiff appealed from the supplemental decree, and defendant filed a cross-appeal.

We reversed the original decree of divorce which plaintiff had obtained from defendant. Although the complaint as then standing prayed separate maintenance, we did not remand the cause with respect to that prayer, nor did either of the parties request that we do so. We held that since "the decree for divorce was erroneously entered, questions of child custody, child support, alimony, property division and attorney's fees need not be decided." Neither party filed a petition for rehearing nor sought leave of the Supreme Court to file an appeal from the judgment which, by lapse of the statutory limitation (Ill. Rev. Stat. 1955, ch. 110, par. 74, sub. par. (3)), became final fifty-five days after January 31, 1955, or on March 27, 1955. Since the parties separated on March 11, 1952, Laetitia, Deborah and Dexter have lived with defendant at 219 Lake Shore Drive, Chicago, in the family dwelling that plaintiff left, and the two younger girls have lived with plaintiff in Winnetka, first in a rented house and subsequently in a house that plaintiff purchased in the same suburb.

Plaintiff's complaint in the present case, praying for separate maintenance, parallels in substance the same charges of misconduct that were embodied in her original and amended complaint in the first suit; charges of cruelty were omitted in the present proceeding. One count of the complaint, which is at law, seeks a judgment of $25,000.

On September 15, 1955, during the pendency of the present proceeding, plaintiff filed a petition for temporary custody of all the children, for temporary support for them as well as for herself, and for attorney's fees. On October 17, 1955 temporary support money and attorney's fees were allowed; the residence of the children was not disturbed.

In the interim, on September 27, 1955, defendant filed his motion to dismiss the complaint, with accompanying exhibits setting forth the full text of plaintiff's amended and supplemental complaint for divorce or, in the alternative, separate maintenance, in the first Coolidge case, as well as defendant's answer to that amended complaint and the full text of our opinion in the first appeal. The motion pleads our judgment as *res judicata* or, in the alternative, as estoppel "by judgment and record of all matters actually litigated in the cause in which that judgment was entered . . ." The chancellor overruled this motion, and also defendant's motion to strike count II of the complaint seeking judgment at law for $25,000. On December 29, 1955 defendant filed an answer, again asserting that the matters put at issue in the first Coolidge case and here reasserted "have been conclusively settled and adjudicated by the opinion and judgment of the Appellate Court"; he denied that he was guilty of misconduct, as charged by plaintiff; he further denied that plaintiff's two returns to his home were in good faith; and he put in issue the other allegations of the complaint. At the same time defendant also filed a counterclaim for declaratory judgment, alleging that plaintiff deserted him, that the desertion has continued for upwards of one year, and that he was not bound to resume marital relations with her. He admitted his responsibility and averred his willingness to support all the children so long as they lived with him, but sought declaratory adjudication that he was

174

not bound to support any of the children who were living with plaintiff as long as she has the means to support them while they are living with her. He also sought injunctive relief. Pursuant to hearing, the chancellor, on April 6, 1956, entered a decree on plaintiff's complaint, finding the issues in her favor, and specifically finding "that the plaintiff at all times conducted herself as a dutiful wife and faithfully performed all her duties and obligations; . . . that plaintiff is now living separate and apart from defendant without fault on her part; [and] that plaintiff is entitled to separate maintenance from defendant as is by statute provided." She was awarded $200 a month for her separate maintenance, and the custody of the two younger girls, together with an award of $150 per month for each child. Defendant was given the custody of Laetitia, Deborah and Dexter. Mutual rights of visitation were incorporated in the decree. The decree dismissed plaintiff's count II for money claimed to have been spent by her between the commencement of the separation and the institution of the present suit, and provided that each party should bear his own attorney's fees.

The chancellor, on April 9, 1956, entered an order denying defendant's amended counterclaim for declaratory judgment that plaintiff was not living separate and apart from him "without fault on her part," and his prayer for an injunction restraining plaintiff from "bringing any action against the defendant in assertion of any claim that she has been living separate and apart without fault on her part at any time prior to April 6, 1956."

Defendant seeks review on this appeal of the final decree for separate maintenance, of the order overruling his motion to dismiss count I of the complaint on the ground of *res judicata* or estopped by record, of the order awarding temporary custody of the two

younger girls to plaintiff and temporary alimony, and of the order denying his prayer for declaratory judgment and injunctional relief.

As the principal ground for reversal it is urged that our opinion and judgment in the first Coolidge case is conclusive on all matters that were or could have been adjudicated in that case. The gravamen of defendant's contention is that the opinion in the first Coolidge case adjudicated that plaintiff was not living separate and apart without fault on her part. Our former decision held that plaintiff had no right to divorce. Although the prayer of the amended and supplemental complaint prayed for divorce, or in the alternative for separate maintenance, the chancellor decided only that plaintiff was entitled to a divorce on the ground of cruelty; he made no finding as to the alternative prayer for separate maintenance. The question of separate maintenance was an entirely different question from that of divorce; the measure of proof and grounds of relief are not the same in cases for separate maintenance as they are in cases of divorce. Abraham v. Abraham, 403 Ill. 312. Under the Illinois Constitution the jurisdiction of the Illinois Appellate Court is exclusively appellate, and the court has jurisdiction to review only the issues decided by the trial court. (Goodrich v. Sprague, 376 Ill. 80.) The first Coolidge case, for purposes of review, involved solely a decree of divorce; we could not, in reviewing that case, have granted or denied separate maintenance for plaintiff. In the Goodrich opinion the court pertinently held: "The office of Appellate Court is to review rulings, orders, or judgments of the court below, contained in the record, and matters not ruled upon by the inferior court are not subject to the consideration of the Appellate Court unless the lower court's failure to rule is made the subject of an assignment of error, in which case the propriety of such

176

failure is the question presented to the Appellate Court and not the merits of the matter upon which the trial court refuses to act. In other words, the Appellate Court's jurisdiction is appellate, and extends only to those matters in controversy which have been ruled upon by the trial court."

 Defendant argues that even if there had been no prior litigation between the parties the record shows that plaintiff was not living separate and apart from her husband without fault on her part; that even under her version of the facts she was not justified in leaving defendant and living separate and apart from him up to the time of the first decree; and that her version of the causes for separation is not supported by the manifest weight of the evidence. We indicated in our prior opinion that neither of the parties was without fault, but, whatever the cause of the original separation, if plaintiff made *bona fide* offers to return in 1955 which were refused by defendant she would nevertheless be entitled to separate maintenance. Garvy v. Garvy, 310 Ill. App. 169. Defendant argues that plaintiff's efforts to return to the family home were not made in good faith, and that the chancellor's holding that they were is contrary to the manifest weight of the evidence. After learning some time in January 1955 that the divorce decree had been reversed by the Appellate Court plaintiff discussed her problem with her pastor, her family and her friends, and decided to go back to defendant. Following a spring vacation with the children, she returned, the day before Easter, to the family home at 219 Lake Shore Drive in the city, bringing her clothing with her. She testifed that she expected the entire family to stay at the 219 Lake Shore Drive address, and she had leased her Winnetka house in the belief that she would no longer need it. She had brought an Easter boutonniere for defendant, but, for him, flowers were evi-

177

dently not the language of reconciliation, and he refused to take plaintiff back. About the middle of May 1955 she made a second attempt to return to defendant. After gaining entrance to the Lake Shore Drive apartment she refused to leave, whereupon defendant locked her in a bedroom; she was not permitted access to any other area of the apartment. Her meals were brought to her—on an irregular schedule. Her attorneys, being resourceful and agile individuals, succeeded in conferring with her—on an outdoor basis; Mr. Knodell scaled iron fences and climbed up to the balcony off her bedroom. She was thus constrained—almost imprisoned, one might say—until she agreed to leave the premises. Defendant argues that her offers to return should have been preceded by a discussion between the two of them, or accompanied by an apology on her part. Her failure to take any preliminary steps or to make an apology before returning indicated, in defendant's view, a lack of good faith. While it might have been more tactful, and possibly more rewarding, if plaintiff had negotiated her attempted returns in the manner suggested by defendant, she cannot be held remiss legally for her direct method of approach; so far as we know, there are no cases which hold that the returning spouse must first discuss the contemplated return or tender an apology for having left. In the *Garvy* case (Garvy v. Garvy, 310 Ill. App. 169), the court adopted the following language from Haley v. Haley, 209 Ill. App. 153: " 'It is the law in this State that under such circumstances it is the duty of the husband to receive the wife and properly provide for her, and that should he refuse to perform this duty it cannot then be said that she is living apart from her husband through her fault. The language of the Supreme Court in Thomas v. Thomas, 152 Ill. 577, 579, is directly applicable: "Even though the original separation was without any fault of the husband, still

178

if she afterwards, in good faith, offered to return and live with him, it was his duty to receive her back and there properly provide for her." ' " Here, plaintiff told defendant, upon her first attempted return, that she had come back "to make a happy home." The chancellor who heard the evidence pertaining to these two offers to return was evidently convinced that they were made in good faith and that she meant to stay and be a good wife. This was enough, and we would not be warranted in finding that his holdings were contrary to the manifest weight of the evidence.

In count II of the complaint plaintiff asked an allowance for support money that she had been compelled to provide for herself and the children from March 11, 1952 until commencement of the instant proceeding, giving defendant credit for amounts paid by him under the prior litigation under alimony and support orders which were subsequently reversed in the first Coolidge case. The court dismissed count II on the ground that it did not state a cause of action upon which relief could be predicated, and plaintiff filed a cross-appeal. She takes the position that at common law, as under the present statute, the husband was and is under an absolute duty to support his children, and that under the Husband and Wife statute, enacted in 1874 (Ill. Rev. Stat. 1955, ch. 68, par. 1) the common-law disability which prevented suit by a wife against her husband was removed. Johnson v. Johnson, 239 Ill. App. 417, is primarily relied on for these contentions. In that case plaintiff, whose husband, an Illinois resident, refused to allow her to return to him after a vacation, obtained a divorce in Minnesota. Since he did not appear and contest the proceedings, the Minnesota court could not award either alimony or child support. Plaintiff subsequently sued in Illinois, where the court held in effect that a woman who obtained a divorce in a foreign court that has no juris-

179

diction to award support for child custody may be reimbursed for money expended by her in support of the child. In the instant case the parties are not divorced. Plaintiff had her day in court as to her rights for support of herself and two of the children, at least until her offers to return in good faith were made to defendant. Moreover, defendant has always admitted his responsibility and averred his willingness and ability to support all the children so long as they lived with him. Upon leaving, plaintiff sought to take all the children with her, but the two older girls refused to go, and Dexter left her home in Winnetka and returned to live with his father. The case of Harding v. Harding, 144 Ill. 588, is extensively cited in reference works considering the question of alimony and child-support. That case holds it to be error for the court to make an order for an allowance to a wife for the support of her minor children, in the absence of a court order giving her their custody, although her income was insufficient for their adequate maintenance according to their station in life, the father being guilty of no neglect of them, and being amply able and willing to support them in his own home. It is plaintiff's contention here that a wife, estranged and separated from her husband, may recover retrospectively for monies expended for her support during the period of separation. Of course plaintiff received temporary alimony and support money for the two children in her custody up to the time of our decision in the first Coolidge case, and the only possible claim for support that she could assert would date from the time of reversal of the decree for divorce up to the date of the award of temporary support in this, the separate maintenance proceeding. Neither of the parties cites cases in point on this question, but we think the reasoning of the Harding case as applicable to child support would likewise apply to the support of plaintiff during

180

the interim period. In the circumstances we think the chancellor properly dismissed count II for the reason that it did not state a cause upon which relief could be granted. Upon the filing of the instant proceeding for separate maintenance plaintiff would of course be entitled to apply for temporary separate maintenance and support for the children in her custody, and such provision was made on her behalf and later on a permanent basis by the decree from which this appeal was taken. Without going into detail as to the respective incomes of the parties, we think the amount awarded to plaintiff, $6,000 per year, for support of herself and the two children in her custody, is not unreasonable.

■ As to the question of custody, the chancellor found both parties fit to be awarded custody of the children, and ruled that the two older girls and the boy (Laetitia, Deborah and Dexter, at the time of this filing aged eighteen, seventeen and thirteen, respectively) remain with defendant, while the two younger girls (Olga and Carol, at the time of this filing aged fourteen and twelve, respectively) were to remain with plaintiff, thus leaving undisturbed the children's residence. This arrangement appears to be preferred by the children and would seem to be the most satisfactory solution; the award should be affirmed.

For the reasons indicated, that portion of the decree awarding separate maintenance and fixing the amount of the allowances should be affirmed; that portion of the decree awarding custody of the two older girls and the boy to defendant and that of the two younger girls to plaintiff is likewise affirmed; that portion of the decree dismissing count II of the complaint is affirmed; as is the ruling on defendant's motion for declaratory judgment and injunctional relief.

Decree affirmed in all respects.

NIEMEYER, P. J. and BURKE, J., concur.